**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

AIMEE K.,

Petitioner,

vs.

COMMISSIONER OF SOCIAL SECURITY,

Respondent.

Case No.: 1:20-cv-00069-REP

**MEMORANDUM DECISION AND ORDER**

Pending is Petitioner Aimee K.'s Petition for Review (Dkt. 1), appealing the Social Security Administration's denial of her application for Title II benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On September 9, 2015, Petitioner protectively filed an application for Title II benefits for a period of disability beginning January 1, 2014. This application was initially denied on August 18, 2016 and, again, on reconsideration on December 1, 2016. On January 30, 2017, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On January 26, 2018, ALJ Stephen Marchioro held a hearing in Boise, Idaho, at which Petitioner, represented by attorney Barbara Harper, appeared and testified. Kent Granat, an impartial vocational expert, also appeared and testified at the same hearing.

On August 21, 2018, the ALJ issued a decision denying Petitioner's claim, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council. On January 2, 2020, the Appeals Council denied Petitioner's

Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner filed this case. She raises four points of error: (i) the ALJ erred in not finding that Petitioner's migraines equaled a listed impairment; (ii) the ALJ did not provide sufficient justification for discrediting Petitioner's symptom testimony; (iii) the ALJ did not provide germane reasons for dismissing a third-party statement; and (iv) the ALJ's residual functional capacity determination was not supported by substantial evidence. Pet.'s Brief at 7-20 (Dkt. 15). Petitioner requests that the Court either reverse the ALJ's decision and find that she is entitled to benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *Id*. at 20.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the

conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay

or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied regardless of their medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant has not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in SGA during the period from January 1, 2014 (the alleged onset date) through June 30, 2018 (the date last insured). AR 29.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe medically determinable impairments: fibromyalgia, degenerative disc disease, migraines, inflammatory arthritis, and congenital cardiac disease status-post pulmonic valve replacement. AR 30.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor

equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that Petitioner's above-listed medically determinable impairments, while severe, do not meet or medically equal, either individually or in combination, the criteria established for any of the qualifying impairments. AR 32-34.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established, if the work lasted long enough for the claimant to learn to do the job and be engaged in SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except she could never climb ladders/ropes/scaffolds. She could occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs. Her ability to balance was unlimited. She must avoid all exposure to extreme heat, extreme cold, unguarded/moving mechanical parts, unprotected heights, and flashing/strobe lights. She could tolerate occasional exposure to wetness/humidity, vibrations, and pulmonary irritants. She could tolerate exposure to no more than moderate noise levels.

AR 34.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of their impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th

Cir. 2014). If the claimant can do such other work, they are not disabled; if the claimant cannot do other work and meets the duration requirement, they are disabled. Here, the ALJ found that through the date last insured, Petitioner was capable of performing past relevant work as a transcriptionist because such work did not require performance of work-related activities precluded by her RFC. AR 38-39. Based on these findings, the ALJ concluded that Petitioner was not disabled. AR 39.

**B. Analysis**

1. The ALJ Did Not Err in Considering Petitioner's Migraines at Step Three

At the outset, Petitioner argues that the ALJ erred at step three when he "failed to assess whether Petitioner's migraines met or equaled a Listing." Pet.'s Brief at 7 (Dkt. 15). But the ALJ *did* consider Petitioner's migraines against Listing 11.00 (Neurological); he just determined that they meet *this* Listing. AR 34. Petitioner's criticism of the ALJ's decision is considered in this more complete context and is more accurately understood as the ALJ evaluating her migraines under the *incorrect* Listing.

At step three, an ALJ must evaluate a claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three [of the sequential process], and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)). "To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed

impairment most like the claimant's impairment." *Tackett*, 180 F.3d at 1099 (internal quotations omitted, emphasis removed); *see also* 20 C.F.R. § 404.1526.

Notably, migraines are not a specifically-listed impairment. If an impairment is not described in the "Listing of Impairments," the regulations require that the ALJ "compare [a claimant's] findings with those for closely analogous listed impairments." 20 C.F.R. § 416.926(b)(2). The Social Security Administration identifies Listing 11.02 (Epilepsy) as the most closely analogous to primary headache disorders. Migraines are included in such disorders and may, alone or in combination with another impairment, medically equal a recognized Listing. SSR 19-4p: *Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders*, available at 2019 WL 4169635 (Aug. 26, 2019); *see also Woolf v. Saul*, 2019 WL 4580037, at *5 (D. Idaho 2019) (citing *Rader v. Comm'r of Soc. Sec.*, 2018 WL 4087988, at *3-4 (D. Idaho 2018) ("Thus, the SSA provides specific guidance regarding the applicability of Listing 11.02 to the step three medical equivalence analysis for migraine headaches. Given this, it is no surprise that an ALJ's failure to specifically consider Listing 11.02 constitutes legal error when a claimant's migraine headaches were found to be a severe impairment at step two.") (citations omitted)).

Listing 11.02B is described as: "Epilepsy, documented by a detailed description of a typical seizure and characterized by . . . [d]yscognitive seizures . . . occurring at least once a week for at least three consecutive months . . . despite adherence to prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02B. Dyscognitive seizures involve "alteration of consciousness without convulsions or loss of muscle control." *Id.* at § 11.00H1b. In this setting, the Social Security Administration's policy interpretation SSR 19-4p instructs ALJs as follows:

> Paragraph B of Listing 11.02 requires dyscognitive seizures occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment. *To evaluate whether a primary headache disorder is equal*

> *in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [Acceptable Medical Source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompany symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)* . . . .

SSR 19-4p, available at 2019 WL 4169635, at *7 (emphasis added); *see also Rader*, 2018 WL 4087988, at *6 ("Notably, Listing 11.02 does not require objective findings or neurological or physical abnormality. Boiled down, Listing 11.02 requires three main elements: (i) a detailed documentation of pain and resultant symptoms; (ii) occurrence of the impairment at least twice a week during a period of three consecutive months of prescribed treatment; and (iii) that the impairment significantly alters a claimant's awareness of daily activity.").

Here, the ALJ found that Petitioner's migraines do not meet Listing 11.00 without ever specifically discussing Listing 11.02's possible application. AR 34. Petitioner claims this was error, while arguing that her migraines actually equal Listing 11.02B. Pet.'s Brief at 9 (Dkt. 15). But simply stating as much does not make it so. Petitioner bears the burden of producing medical evidence that her migraines equal Listing 11.02B. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). And she must proffer a plausible theory based on that evidence to show that her migraines equal that Listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any Listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."). Petitioner has not met her burden here.

To begin, at the January 26, 2018 hearing, Petitioner testified that she suffers from migraines once or twice a week, but that she is able to "get rid of the pain of the migraines" by using over-the-counter medication (ibuprofen). AR 74. Petitioner notably did not assign any debilitating symptoms to her migraines, opting instead to claim that her "fatigue" and "chest pain" prevent her from working full-time:

> Q: Okay, well why do you think you're not capable of working?
>
> A: I'm tired.
>
> Q: Okay.
>
> A: I'm just tired. I can't work. . . . .
>
> Q: But are you saying that fatigue is the thing that really would keep you from working full-time?
>
> A: No, I have chest pain. I am tired. When I'm done with walking or yoga and that's, say, a half hour or an hour at the Y I go home and I'm tired and that's just exercise to keep myself healthy so when I have my next heart surgery which is who knows when to fix my aortic valve I want to make sure that I'm healthy enough to survive.
>
> Q: Okay, absolutely. Okay, all right, so that's the key thing that would prevent you from working full-time?
>
> A: Yes. . . . .
>
> Q: And it's not just tired, it's fatigue, exhaustion.
>
> A: Yeah, it's, I'm just done for the day. I just, and if I had to work even if it was part time just the real estate going out to a house and showing them by the time I get home I'm tired and if I had to do that really hard every day go to a different job every day I think I would be dead. I'm sorry, I would. Just, I'm just tired.

AR 65, 69, 76. Without attributing Petitioner's alleged inability to work to her migraines, the ALJ did not need to explain his rationale for not finding that they equaled a specific Listing. *Lewis*, 236 F.3d at 514 (ALJ is not required to state why a claimant fails to satisfy every criteria of the Listing if the ALJ adequately summarizes and evaluates the evidence).

Moreover, nothing in the medical record suggests that Petitioner's headaches are severe enough to equal Listing 11.02B. The treatment notes she cites reveal only that Petitioner complained of migraines in September and October of 2015 and March of 2018. Pet.'s Brief at 9 (Dkt. 15). By themselves, these accounts reflect only Petitioner's subjective complaints at moments in time; they do not represent descriptions from medical sources establishing the severity and durational criteria that Listing 11.02B demands.[2] Regardless, the ALJ not only recognized Petitioner's migraines as severe, he included additional environmental limitations within her RFC to accommodate her claimed migraine triggers (noise and lights). AR 34, 37.

Reversal is not warranted on this issue.

2. The ALJ Did Not Err in Questioning Petitioner's Symptom Testimony

Petitioner contends that the ALJ erred because the reasons for rejecting her testimony were not clear and convincing, and not supported by substantial evidence in the record. Pet.'s Brief at 10-17 (Dkt. 15). Petitioner takes issue primarily with the ALJ's evaluation of her cardiac-related symptomology and affiliated pain allegations, claiming that the ALJ was required to take these symptoms into account when formulating her RFC. *Id*.

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). In evaluating a claimant's subjective symptom testimony, the ALJ engages

---

[2] For example, while Petitioner complained of migraines on September 18, 2015, she experienced "good relief of her symptoms" by October 27, 2015. *Compare* AR 537, *with* AR 555. Likewise, whereas Petitioner's primary care provider, Dr. Bayo Crownson, noted on October 6, 2015 that Petitioner complained of migraine headaches, her follow-up visit on January 15, 2016 made no reference to Petitioner's migraines. *Compare* AR 447, *with* AR 443. The ALJ gave Dr. Crownson's opinions "very little weight" in any event. AR 37 (citing AR 1596-99). Because Petitioner does not challenge the ALJ's consideration of the medical opinion evidence, any argument to that end is waived. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id*.

Generalized findings will not satisfy this standard. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. at 493 (quoting *Reddick*, 157 F.3d at 722). If there is such substantial evidence, courts will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Even when the evidence can support either outcome, a court may not substitute its judgement for that of the ALJ. *Tackett*, 180 F.3d at 1098.

Here, Petitioner alleges an inability to perform work-related activity due to joint pain, back pain, and cardiac insufficiency that limits her ability to sit, stand, walk, lift, or exert for extended periods of time. Her April 26, 2016 and October 19, 2016 function reports confirm this, stating in relevant part:

- I have chest pain (sharp pain in my chest daily). I am tired all the time; everyday my fibromyalgia is painful and throughout my body. This also limits my ability to work. Arthritis in my joints, my hands so it is hard for me to type. I have back pain because of scoliosis and lordosis. All of this makes everyday activities difficult. I cannot do anything because of these problems.

I have migraines several days a week which makes me nauseous and I cannot be in the light or around smells.

- I have been feeling my conditions for the past few years. It has been hard for me to give up on daily hobbies but my heart condition, fibromyalgia, and migraines have made it hard. I cannot enjoy bike rides, running with children, Zumba, hiking. It's too much. My chest hurts. I get so tired and have to lay down now just going for a walk.

- My heart condition limits me in how much I can lift and reaching. Arthritis and fibromyalgia affects squatting, kneeling, stair climbing. When I have migraines, that affects my seeing and hearing.

- I am having difficulty filling out this paperwork. I am tired all the time. I can't sleep at night. My memory is horrible. I forget appointments all the time.

- I do as much housework as I can get done that day. Some days I can't do any. If I do too much, I am sick for the next few days.

- Most days it is hard to get motivated to get out of bed.

- I cannot lift more than 10 pounds. I cannot squat/kneel because I cannot get back up without pain. Pain with bending. Pain with standing. Reaching pulls on my chest. Stair climbing is painful in my legs. Concentration/memory is hard.

- My health has been deteriorating as I get older. I am 41 years old. I can barely do household chores. I have migraines nearly every day. My back limits me from doing a lot. My fibromyalgia limits me. Arthritis limits me. I get chest pain with activity.

AR 258-59, 263, 265, 292-94, 297, 299. Petitioner's testimony at the January 30, 2017 hearing largely parallels these claims. *Supra* (citing AR 65, 69, 76 (referencing Petitioner's fatigue and chest pain as contributing to her inability to work)).

The ALJ found that, while Petitioner's impairments could reasonably be expected to cause the symptoms alleged, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 35. As described below, the ALJ's justification in this regard amounts to clear and convincing reasons for questioning Petitioner's symptom testimony.

First, Petitioner's challenge to the ALJ's credibility determination relies on instances in the record where her impairments and related symptoms are verified, before reframing the issue as the ALJ's failure to recognize as much. Pet.'s Brief at 13-17 (Dkt. 15). However, the ALJ did not reject allegations that Petitioner suffers from certain impairments, or that such impairments are painful and impact her ability to work. Indeed, the ALJ expressly concluded that Petitioner suffers from fibromyalgia, degenerative disc disease, migraines, inflammatory arthritis, and congenital cardiac disease, and that such impairments are severe. AR 30. No, the relevant portion of the ALJ's decision on this issue is that the ALJ questioned the *extent* to which these recognized impairments and connected symptoms prevented Petitioner from working at all. Significantly, even in doing so, the ALJ specifically accounted for Petitioner's limitations during the fourth step of the sequential process (the RFC analysis). AR 34-38. Therefore, where Petitioner's arguments rely upon the existence of certain limiting impairments and symptoms, the arguments are inapposite to the critical issue because the ALJ already acknowledged such limitations and incorporated them into the RFC to accommodate Petitioner's symptoms. The question remaining is not whether such limitations/symptoms exist, but whether Petitioner is able to work even with such limitations.

Second, the ALJ concluded that Petitioner's daily activities were inconsistent with her above-referenced allegations of *totally*-disabling limitations. AR 35-36. The ALJ pointed out that Petitioner reported to her medical providers that she (i) "continued to exercise regularly" (including playing volleyball); (ii) was working part-time as a realtor, although she spent most of her time caring for her children and running the household; (iii) "works out doing Zoomba and ellipticals" as she "[t]ries to stay fit"; (iv) tends to her garden; and (v) enjoys going camping as a family. *Id*. (citing AR 1005, 1013 (noting also that she "[n]ever gets chest pain during exercise, or chest pain initially will get better when she starts to exercise"); 1268, 1359). These activities

indicate better functioning than Petitioner reports and constitute valid reasons to reject the extent of her complaints. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").[3]

Third, the ALJ concluded that Petitioner's claims did not neatly align with the medical record. AR 35-37. Whereas Petitioner reported that her cardiac condition caused debilitating fatigue, her medical records do not paint the picture of someone who is near to completely inactive due to constant and severe pain. As the ALJ emphasized, repeated "unremarkable" physical examinations and reports of being "too busy" to attend physical therapy sessions show that Petitioner remained capable of sedentary work activity within the confines of her RFC. AR 35-36 (citing AR 1182, 1192, 1196, 1224-25, 1246, 1253, 1281, 1620, 1631). Additionally, Petitioner's cardiac impairment has been treated since infancy with various surgical repairs, suggesting that "her symptoms were present prior to the alleged onset date and did not prevent work activity." AR 36. To be sure, as of September 2016, Petitioner's medical provider indicated that Petitioner's ongoing chest pain was "not disabling and not overtly concerning clinically." AR 37 (citing AR 1574). These are clear and convincing reasons to discount Petitioner's testimony. *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record

---

[3] The Court agrees with Petitioner that these activities standing alone do not establish whether or not Petitioner can work full-time. But this does not mean that they are irrelevant or inappropriate for the ALJ to consider when evaluating Petitioner's credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's reported] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

is a sufficient basis for rejecting the claimant's subjective testimony."); *Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Together, the record contains clear and convincing explanations as to why the ALJ found Petitioner's testimony not entirely credible. While Petitioner has identified conflicting evidence that supports her position, it is not the Court's role to weigh such evidence, draw inferences, or resolve credibility. Rather, the Court's measuring stick is simply whether the ALJ supported his decision to doubt Petitioner's credibility and deny disability benefits with clear and convincing reasons. He did. Accordingly, as required by controlling law, the ALJ will not be second-guessed as to such conclusions on the record here against the justifications provided. *Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

Reversal is not warranted on this issue.

3. The ALJ Properly Evaluated the Lay Witness Evidence

Elsie K., Petitioner's mother-in-law, submitted two third-party function reports describing the practical effects of Petitioner's pain, fatigue, and cardiac condition. AR 243-52, 281-91. Like Petitioner herself, Ms. K. claimed that Petitioner cannot perform daily tasks and is unable to work. AR 288. The ALJ rejected Ms. K.'s statements because they were "not consistent with the contemporaneous reports [Petitioner] gave to treating providers or [her] robust activities of daily living." AR 37. Petitioner contends the ALJ erred in this respect. Pet.'s Brief at 17-18 (Dkt. 15).

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

1993). "[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, [the ALJ] must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. When rejecting third-party statements which are similar in nature to the statements of the claimant, the ALJ may cite the same reasons given for rejecting the claimant's statement. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Ms. K.'s assessment of her daughter-in-law's fatigue was similar to Petitioner's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based on the same reasons he discounted Petitioner's allegations. Because the ALJ provided clear and convincing reasons for rejecting Petitioner's own subjective complaints, and because Ms. K.'s testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for discounting Ms. K.'s testimony. *Supra*.

Reversal is not warranted on this issue.

4. The ALJ did Not Err in Assessing Petitioner's RFC

The ALJ concluded that Petitioner's RFC allowed her to perform sedentary work with certain limitations, including her past relevant work as a medical transcriptionist. AR 38. Petitioner faults the ALJ on this issue because he failed to (i) provide limitations accounting for Petitioner's pain management and the time off-task needed to take medications and then wait for the pain of a migraine to subside, and (ii) include in his hypotheticals to the vocational expert any such additional limitations. Pet.'s Brief at 19 (Dkt. 15). The Court disagrees.

Preliminarily, these arguments rise and fall with the Court's earlier discussion of these same issues. *Supra*. The Court will not repeat that discussion here. But more to the point, other than her own testimony and conclusory legal assertions, Petitioner points to no evidence

establishing that she would be so off-tasked. So, it was reasonable for the ALJ not to include such a limitation in her RFC, even though he did propose off-task-related hypothetical questions to the vocational expert. AR 81-82. At the same time, the ALJ included light and noise limitations in his hypotheticals to the vocational expert and later incorporated the same within Petitioner's RFC. AR 34, 78-79. *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) (it is ALJ's responsibility to "translat[e] and incorporate[e] [the] clinical findings into a sufficient RFC."). In this setting, substantial evidence supports the ALJ's findings at the fourth and fifth steps of the sequential process. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ properly relied on vocational expert's testimony because "[t]he hypothetical that the ALJ posed to the [vocational expert] contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").

Reversal is not warranted on this issue.

## IV. CONCLUSION

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ. The ALJ has provided reasonable and rational support for his conclusions, even if such evidence is susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence. Therefore, the Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V. ORDER

Based on the foregoing, Petitioner's Petitioner for Review (Dkt. 1) is DENIED and the decision of the Commissioner is AFFIRMED.




DATED: December 27, 2021

____________________________
Honorable Raymond E. Patricco
U. S. Magistrate Judge